**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| N.E.B.M.<br><br>*Plaintiff*,<br><br>v.<br><br>JOSEPH B. EDLOW, Director, U.S. Citizenship and Immigration Services, ROSE KENDRICK, Acting Director, National Benefits Center, U.S. Citizenship and Immigration Services, DAVID J. VENTURELLA, Senior Official Performing the Duties of the Director, U.S. Immigration and Customs Enforcement, MARKWAYNE MULLIN, Secretary, U.S. Department of Homeland Security, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY<br><br>*Defendants*. | Civil Action No. 1:26-cv-2973 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF SEEKING REINSTATEMENT OF DEFERRED ACTION**

N.E.B.M. brings this action to obtain reinstatement of his deferred action status and work authorization and seeks relief under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq*., the *Accardi* doctrine, and the Due Process Clause of the Fifth Amendment. As set forth below, Defendants' arbitrary and unlawful termination of N.E.B.M.'s deferred action stripped him of the protections previously afforded while his SIJS-based immigration proceedings remain ongoing. N.E.B.M. therefore requests that this Court vacate the decision to terminate his deferred

action, reinstate his deferred action and associated work authorization, and enjoin Defendants from depriving him of those protections absent compliance with applicable law and agency policy.

## INTRODUCTION

1. Last week was N.E.B.M.'s eighteenth birthday. Instead of celebrating with his family and friends in Louisiana, he spent his birthday alone in a facility for young immigrants in Michigan. He does not know why he was placed back in federal immigration custody while still a child. N.E.B.M. previously obtained Special Immigrant Juvenile Status with deferred action and was on a pathway to obtaining lawful permanent residence in the United States. He was apprehended by Immigration and Customs Enforcement as a minor, taken far away from his home, and *post-hoc* stripped of his deferred-action status and his work authorization based on that status. The government provided no reason for doing this to him. Now, instead of looking forward to a major life milestone, it has filled him with fear. Despite having a legal pathway to remain in the United States in the future, he has he arbitrarily lost his protection from deportation. He comes to this Court seeking reinstatement of his deferred-action status so that he can safely return home to his family, school, and community.

2. N.E.B.M. was born in Honduras and came to the United States in the summer of 2023 to escape years of violence, abuse, and exploitation. Because N.E.B.M. entered the United States alone, the Office of Refugee Resettlement ("ORR") took him into its custody and, after approving his aunt through its sponsorship process, released him into her custody. For over two years, N.E.B.M. lived with his aunt and two cousins in Louisiana, attended school, and began building a safe and stable life with his aunt and local community.

3. While living with his aunt, N.E.B.M. obtained Special Immigrant Juvenile Status ("SIJS") from U.S. Citizenship and Immigration Services ("USCIS"). SIJS is a humanitarian

immigration classification that Congress created for children who have been abused, abandoned, or neglected by one or both parents. SIJS placed N.E.B.M. on a pathway to lawful permanent residence ("LPR") and reflected the federal government's determination that returning him to his country of origin would not be in his best interests.

4. Due to statutory visa limits and a substantial backlog in the SIJS visa category, N.E.B.M. could not immediately apply for adjustment of status. He was instead required to wait for an immigrant visa to become available. Because SIJS beneficiaries often face lengthy waiting periods before they can pursue LPR status, USCIS separately evaluated N.E.B.M. for deferred action and affirmatively determined that he merited that discretionary humanitarian protection. That determination reflected USCIS's considered judgment that removal action against N.E.B.M. should be deferred while he waits for the opportunity to pursue LPR status through his SIJS classification. The grant of deferred action also authorized N.E.B.M. to obtain an Employment Authorization Document ("EAD"), allowing him to work lawfully in the United States during that period.

5. After N.E.B.M. was involved in a minor traffic accident, local law enforcement arrested him and called U.S. Immigration and Customs Enforcement ("ICE"). N.E.B.M. was subsequently transferred back into ORR custody. Although the accident did not affect the validity of N.E.B.M.'s SIJS petition or otherwise alter his eligibility for SIJS-based adjustment of status, USCIS terminated his deferred action after he was taken into federal custody without sufficient explanation.

6. The termination stripped N.E.B.M. of protections that USCIS had previously determined he should receive while awaiting the opportunity to pursue LPR status. It also resulted in the loss of his EAD, depriving him of the ability to lawfully work while awaiting visa availability. Although Congress created SIJS to protect vulnerable youth from returning to

circumstances of abuse, abandonment, and neglect, the loss of deferred action subjects N.E.B.M. to immigration consequences that undermine those protections and threaten the stability Congress intended SIJS recipients to receive

7. USCIS's actions violate the APA, the *Accardi* doctrine, and the Due Process Clause of the Fifth Amendment. USCIS failed to provide a reasoned explanation for terminating N.E.B.M.'s deferred action, failed to adequately consider his reliance interests and the consequences of its decision, and failed to afford constitutionally sufficient process before depriving him of a significant immigration protection that it had previously determined he merited while awaiting visa availability through the SIJS process.

8. N.E.B.M. therefore seeks vacatur of the termination of his deferred action and injunctive relief requiring Defendants to reinstate it, together with his work authorization. He also seeks relief ensuring that the protections associated with his SIJS classification remain available until a visa is available to him, consistent with the statutory framework Congress enacted to protect vulnerable immigrant youth.

## PARTIES

9. N.E.B.M. is a recently turned eighteen-year-old Honduran national who entered the United States without inspection and has been residing here since the age of fourteen. Prior to his arrest and detention, N.E.B.M. was living with his aunt in Louisiana and his two cousins. N.E.B.M. has an approved SIJS petition and had a grant of deferred action valid through October 31, 2028.

10. Defendant Joseph B. Edlow is sued in his official capacity as Director of USCIS, which administers the adjudication of SIJS petitions, deferred action, and related employment authorization benefits.

11. Defendant Rose Kendrick is sued in her official capacity as Acting Director of USCIS's National Benefits Center, which administers and processes deferred-action determinations and issues notices of termination of individual SIJS deferred action grants and related employment authorization, including the actions challenged in this Complaint.

12. Defendant USCIS is a component of the Department of Homeland Security ("DHS") and administers the adjudication of SIJS petitions, deferred action, and related employment authorization benefits. USCIS is responsible for the termination of N.E.B.M.'s deferred action.

13. Defendant David J. Venturella is sued in his official capacity as Senior Official Performing the Duties of the Director of ICE, which enforces the Nation's immigration laws and is responsible for carrying out immigration enforcement actions, including actions that may result from the termination of N.E.B.M.'s deferred action.

14. Defendant ICE is a component of DHS and enforces federal immigration laws and may take enforcement action against noncitizens whose deferred action has been terminated. ICE is therefore responsible for implementing or enforcing the consequences of the challenged agency action.

15. Defendant Markwayne Mullin is sued in his official capacity as Secretary of DHS, which oversees USCIS and ICE and is ultimately responsible for the administration and enforcement of the immigration laws implicated in this action.

16. Defendant DHS is an executive department of the United States government. DHS oversees USCIS and ICE and is responsible for the administration of the administrative programs and policies challenged in this action.

## JURISDICTION AND VENUE

17. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1651 (the All Writs Act).

18. This Court also has additional remedial authority under 28 U.S.C. §§ 2201-02 (the Declaratory Judgment Act), to grant injunctive and declaratory relief.

19. Venue is proper in the Western District of Michigan under 28 U.S.C. § 1391(e) because Defendants are employees, officers, and agencies of the United States, and because N.E.B.M. is currently residing within this District and is suffering the ongoing effects of the challenged agency actions within this District.

20. Administrative exhaustion is unnecessary because it would be futile. USCIS afforded N.E.B.M. no mechanism to challenge the termination of his deferred action, expressly stating in its decision letter that the determination was not appealable and could not be challenged through a motion to reopen or reconsider. Ex. 1 (Notice of Termination of Deferred Action for N.E.B.M.).

21. The termination of N.E.B.M.'s deferred action is also reviewable under the APA because SIJS deferred action is administered through a standardized process with meaningful standards governing USCIS's exercise of discretion. *Padilla Posadas* v. *Hyde*, No. 26-cv-10276-ADB, 2026 WL 2935307, at *3 (D. Mass. Sept. 30, 2026).

## LEGAL FRAMEWORK

### A. SIJS Provides a Pathway to Permanent Status for Vulnerable Youth

22. SIJS was created by Congress in 1990 to protect certain vulnerable immigrant children who have been abused, neglected, or abandoned by one or both of their parents and provide them with a pathway towards citizenship. Immigration Act of 1990, Pub. L. No. 101-649, § 153, 104 Stat. 4978 (1990) (amending various sections of the INA). SIJS "alleviates

hardships experienced by some dependents of United States juvenile courts by providing qualified [noncitizens] with the opportunity to apply for [SIJS] classification and [LPR] status, with [the] possibility of becoming citizens of the United States in the future." Special Immigrant Status, 58 Fed. Reg. 42843, 42844 (Aug. 12, 1993). Since the enactment of SIJS in 1990, Congress has made multiple amendments to the INA to expand the protections available under SIJS, most recently in 2008, through the Trafficking Victims Protection Reauthorization Act (TVPRA), Pub. L. No. 110-457, § 235(d), 122 Stat. 5044 (2008).

23. SIJS status is not awarded to all immigrant youth. First, potential recipients must satisfy "a set of rigorous, congressionally defined eligibility criteria." *Osorio-Martinez v. U.S. Att'y Gen.*, 893 F.3d 153, 163 (3d Cir. 2018). Specifically, they must (1) be present in the United States and (2) obtain a qualifying state juvenile court order finding that the applicant: (i) is dependent on the juvenile court or placed by the court under the custody of a state agency or an individual appointed by a State or juvenile court; (ii) cannot be reunified with one or both parents because of abuse, neglect, abandonment, or other similar basis; and (iii) that it is not in the best interest of the youth to be returned to the youth's country of origin. 8 U.S.C. § 1101(a)(27)(J); 8 C.F.R. § 204.11(c).

24. To apply for SIJS status, a Form I-360 Petition must be filed with USCIS, along with the state juvenile court order and other evidence. *See* 8 C.F.R. § 204.11(b). USCIS then considers whether to exercise its statutory "consent" function to approve the petition. *See* 8 U.S.C. § 1101(a)(27)(J)(iii). By doing so, USCIS recognizes the state juvenile court's determinations, including that the child's return to the child's country of origin would be contrary to the child's best interests. *Id.*

25. The primary benefit of SIJS is to allow vulnerable young immigrants to seek LPR status while remaining in the United States through a process called adjustment of status. *See* 8

U.S.C. § 1255(h). To facilitate this process, Congress has removed numerous barriers to adjustment of status for SIJS beneficiaries. *Id*. SIJS youth are exempt from certain requirements that ordinarily apply to applicants seeking LPR status, including the requirements to show that they are admissible under immigration law and have entered the country following inspection or parole by an immigration officer. *Id*. Congress purposefully exempted SIJS youth from these and other inadmissibility grounds, made them eligible for adjustment regardless of their actual manner of entry into the United States, and created a generous waiver of other non-exempted inadmissibility grounds. *Id*. Congress also explicitly provided that certain grounds for removal "shall not apply" to SIJS beneficiaries. 8 U.S.C. § 1227(c). Accordingly, the SIJS statute "show[s] a congressional intent to assist a limited group of abused children to remain safely in the country with a means to apply for LPR status." *Garcia v. Holder*, 659 F.3d 1261, 1271 (9th Cir. 2011) (abrogated on other grounds).

26. While SIJS allows youth to apply for LPR status, they can only do so when a visa is immediately available to them. 8 U.S.C. § 1255(h). However, there is an annual cap on the number of visas available to SIJS beneficiaries. 8 U.S.C. § 1153(b)(4). Because of this cap, the number of SIJS beneficiaries has surpassed the supply of available visas, leaving an estimated 100,000 young people in a SIJS backlog, waiting to apply for a visa.[1]

27. The structure of the SIJS program shows Congress' intent that SIJS recipients remain safely in the United States until they can apply for LPR status. Indeed, every SIJS recipient has been the subject of a state-court determination that reunification with one or both

---

[1] *See* R. Davidson et al., False Hopes: Over 100,000 Immigrant Youth Trapped in the SIJS Backlog (2023), https://static1.squarespace.com/static/5fe8d735a897d33f7e7054cd/t/656a48a3f02597441a4cbf95/1701464285675/2023-false-hopes-report.pdf.

parents is not viable because of abuse, neglect, abandonment, or similar mistreatment. The state court must also determine that it is not in the child's best interests to return to their country of origin. 8 C.F.R. § 204.11(c). USCIS then reviews those findings and must consent to the SIJS petition before granting SIJS classification. 8 U.S.C. § 1101(a)(27)(J). Courts have recognized that SIJS youth are only "a hair's breadth from being able to adjust their status" and have a "substantial legal relationship" with the United States. *Osorio-Martinez*, 893 F.3d at 174.

28. Nonetheless, DHS takes the position that SIJS youth in the visa backlog remain subject to removal for their purported lack of lawful immigration status in the United States while they wait to apply for LPR status. USCIS Policy Alert, PA-2022-10, Special Immigrant Juvenile Classification and Deferred Action (Mar. 7, 2022), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20220307-SIJAndDeferredAction.pdf (hereafter "2022 USCIS Policy Alert") (stating that "[n]oncitizens without lawful status who have an approved SIJ petition remain subject to removal . . . until they can apply to adjust status…."); *see also* Ex. 2, USCIS-ICE Memorandum at 1 (confirming that "many individuals who receive a grant of SIJ [deferred action] from USCIS are also in removal proceedings").

29. Federal courts in Michigan have nevertheless recognized that deferred action provides meaningful protection from removal while SIJS beneficiaries await the opportunity to adjust status. *See, e.g., Darynel Gerardo Medina Lopez v. Raycra*ft, 2026 WL 1370583, at *11 (E.D. Mich. May 15, 2026) (holding that a grant of deferred action rendered the petitioner's removal order "non-executable" unless and until USCIS terminated that protection).

### B. Deferred Action Furthers Congress' Intent That SIJS Beneficiaries Be Protected

30. In March 2022, to address the harms being caused by the SIJS visa backlog, USCIS announced that all young people granted SIJS would also be considered for a discretionary grant of deferred action, which would protect them from removal and make them eligible for employment authorization while waiting for a visa to become available. 2022 USCIS Policy Alert. In enacting this policy, USCIS acknowledged that "Congress likely did not envision that SIJ petitioners would have to wait years before a visa became available. . . ." *Id*.

31. In June 2025, USCIS rescinded the SIJS deferred action policy, ending its practice of considering SIJS beneficiaries for deferred action while they awaited visa availability. *See* USCIS Policy Alert, PA-2025-07, "Special Immigrant Juvenile Classification and Deferred Action" 2 (June 6, 2025), https://www.uscis.gov/sites/default/files/document/policy-manual-updates/20250606-SIJDeferredAction.pdf. However, this change had no effect on N.E.B.M., who had already been granted deferred action.

32. In November 2025, a federal court stayed that rescission, thereby restoring the 2022 policy during the litigation's pendency. *A.C.R. v. Noem*, No. 25-CV-3962, 2025 WL 3228840 (E.D.N.Y. Nov. 19, 2025). In any event, the government's unlawful attempt to rescind the program had no impact on SIJS beneficiaries, like N.E.B.M., who had already received deferred action. *See* 2025 USCIS Policy Alert (stating that noncitizens "with current deferred action based on their SIJ classification will generally retain this deferred action . . . until the current validity periods expire."); USCIS Policy Manual, vol. 6, part J, ch. 4, https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4 (same); *see also* Ex. 3 (N.E.B.M.'s Grant of SIJS and Deferred Action).

33. Deferred action does not confer lawful status and does not prevent an immigration judge from issuing a removal order. USCIS Policy Manual, vol. 1, pt. H, ch. 2.A.4, https://www.uscis.gov/policymanual/volume-1-part-h-chapter-2. However, unless and until it is terminated, deferred action generally protects a noncitizen from removal by reflecting the government's decision to defer immigration enforcement action against that individual. *See*, e.g., *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) (stating that "[a]pproval of deferred action status means that … no action will thereafter be taken to proceed against an apparently deportable [noncitizen], even on grounds normally regarded as aggravated"). Individuals granted deferred action may also apply for employment authorization. 8 C.F.R. § 274a.12(c)(14). In the SIJS context, USCIS has historically granted deferred action for four-year increments to eligible beneficiaries awaiting visa availability. *See* 2022 USCIS Policy Alert.

34. USCIS's internal policies permit termination of deferred action before its expiration, but such termination is not automatic. Rather, USCIS must make an individualized determination that termination is warranted based on the specific circumstances of the recipient's case. For example, USCIS may terminate deferred action if it determines that "a favorable exercise of discretion is no longer warranted"; that the individual's SIJS petition "was approved in error and the petition is revoked"; or that the deferred action itself was "granted in error." USCIS Policy Manual, vol. 6, part J, ch. 4, https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4; *see also* Ex. 2, USCIS-ICE Memorandum at 2 (confirming that "USCIS has the sole authority to grant and terminate deferred action for noncitizens with SIJ classification" and that "USCIS may terminate deferred action if the SIJ-classified individual was not eligible at the time of the initial grant of deferred action, the SIJ Form I-360 is revoked, or if they are no longer eligible based on new information, including new information about criminal activity that

impacts the discretionary determination to grant SIJ deferred action"). Thus, USCIS policy contemplates that deferred action, once granted, will remain in place unless and until USCIS identifies a specific, individualized basis for termination. *Id*.

## STATEMENT OF FACTS

### A. N.E.B.M. Flees to the United States and Obtains SIJS and Deferred Action

35. N.E.B.M. entered the United States without inspection in 2023, when he was fourteen years old. After a period in ORR custody, ORR released him to his aunt in Louisiana, where he resided with her and his two cousins.

36. Shortly after arriving in Louisiana, N.E.B.M. began the process of applying for SIJS. After obtaining the necessary court order finding that reunification with one or both of his parents was not viable and that it was not in his best interests to return to his country of origin, N.E.B.M. submitted a SIJS petition to USCIS on August 2, 2024. *See* Ex. 4 (N.E.B.M.'s Court Documents); Ex. 5 (N.E.B.M.'s Custody Order); Ex. 3 (N.E.B.M.'s Grant of SIJS and Deferred Action).

37. USCIS approved N.E.B.M.'s SIJS petition on October 31, 2024. USCIS also determined that N.E.B.M. merited deferred action and granted him that protection for a four-year period, expiring on October 31, 2028. *Id*. This grant protected N.E.B.M. from removal while he awaited visa availability and made him eligible to apply for employment authorization.

38. Consistent with USCIS's grant of deferred action, N.E.B.M. received deferred-action-based employment authorization. That employment authorization was valid for the same period as his deferred action and enabled him to work lawfully in the United States while awaiting visa availability through the SIJS process. Ex. 3 (N.E.B.M.'s Grant of SIJS and Deferred Action).

39. Following his release from ORR custody, N.E.B.M. complied with all requirements that federal immigration authorities imposed on him. He resided with his aunt, attended school, and continued building a stable life in the United States while awaiting the opportunity to pursue lawful permanent residence through his approved SIJS petition. Ex. 6 (Declaration of N.E.B.M.).

40. At all relevant times, N.E.B.M. remained eligible for SIJS-based adjustment of status. His inability to immediately seek LPR status was solely the result of the visa backlog affecting SIJS beneficiaries nationwide.

**B. N.E.B.M. Returns to ORR Custody Following a Minor Traffic Accident**

41. In December 2025, just a few weeks before Christmas, N.E.B.M. was involved in a minor traffic accident in Louisiana. *Id*.

42. Local law-enforcement officers responded to the accident. During the encounter, local authorities contacted ICE. *Id*.

43. Following that contact, federal immigration authorities took N.E.B.M. into custody and transferred him back into ORR custody in Texas. *Id*.

44. ORR then transferred N.E.B.M. from its facility in Texas to a facility in Michigan. *Id*.

45. Prior to this incident, USCIS had never advised N.E.B.M. that his grant of deferred action was in jeopardy. Nor had USCIS informed him that any circumstance existed that would warrant reconsideration of the agency's prior determination that he merited deferred action. *See* Ex. 3 (N.E.B.M.'s Grant of SIJS and Deferred Action); Ex. 1 (Notice of Termination of Deferred Action for N.E.B.M.).

46. Upon information and belief, no agency has alleged that N.E.B.M. engaged in conduct that rendered him ineligible for SIJS, caused the revocation of his SIJS petition, or otherwise affected USCIS's original determination that he merited deferred action.

**C. USCIS Terminates N.E.B.M.'s Deferred Action While in ORR Custody**

47. On December 16, 2025, shortly after N.E.B.M.'s return to ORR custody, USCIS terminated his grant of deferred action. Ex. 1 (Notice of Termination of Deferred Action for N.E.B.M.).

48. USCIS provided N.E.B.M. with no advance notice that it intended to terminate his deferred action. *Id.*

49. USCIS likewise provided N.E.B.M. no opportunity to submit evidence, explain the relevant circumstances, or otherwise demonstrate that he continued to merit deferred action. *Id.*

50. The termination notice did not identify any new negative discretionary factors that arose after USCIS granted deferred action on October 31, 2024. *Id.*

51. The notice also did not state that N.E.B.M.'s SIJS petition had been approved in error or that any other individualized basis existed for termination. *Id.*

52. In the notice, USCIS also issued a revocation of N.E.B.M.'s EAD. The notice stated that USCIS intended to revoke N.E.B.M.'s employment authorization because the condition upon which it had been granted, namely deferred action, allegedly no longer existed. *Id.*

53. USCIS provided no separate explanation for why N.E.B.M.'s employment authorization should be revoked and identified no reason independent of the deferred-action termination. *Id.*

54. The termination nevertheless immediately stripped N.E.B.M. of the deferred-action protection USCIS had previously determined he merited while awaiting visa availability. *Id*.

55. As a result of the termination, N.E.B.M. lost the protection from removal associated with his deferred-action grant, became subject to the revocation of EAD, and lost the ability to rely on that grant while awaiting the opportunity to apply for LPR status.

56. USCIS informed N.E.B.M. that the termination decision could not be appealed and could not be challenged through a motion to reopen or motion to reconsider. *Id*.

57. N.E.B.M. remains the beneficiary of an approved SIJS petition. He likewise remains subject to the same visa backlog that existed when USCIS originally determined that he merited deferred action. Ex. 3 (N.E.B.M.'s Grant of SIJS and Deferred Action). USCIS has never revoked his SIJS classification, determined it was granted in error, or identified any individualized basis demonstrating that deferred action is no longer warranted. Ex. 3 (N.E.B.M.'s Grant of SIJS and Deferred Action); Ex. 1 (Notice of Termination of Deferred Action for N.E.B.M.).

58. To date, USCIS has failed to provide a reasoned explanation for why N.E.B.M. no longer merits the deferred-action protection that the agency previously determined he merited while awaiting visa availability. Ex. 1 (Notice of Termination of Deferred Action for N.E.B.M.).

59. The termination of N.E.B.M.'s deferred action has left him vulnerable to immigration enforcement despite USCIS's prior determination that he merited deferred-action protection while awaiting the opportunity to pursue LPR status through SIJS, a determination upon which N.E.B.M. has relied. It also left him without work authorization that is increasingly important as he enters young adulthood.

## CAUSES OF ACTION

### COUNT ONE:
### VIOLATION OF THE APA, 5 U.S.C. § 706(2)(A), ARBITRARY AND CAPRICIOUS TERMINATION OF DEFERRED ACTION AND EMPLOYMENT AUTHORIZATION

60. N.E.B.M. incorporates by reference all the allegations contained in Paragraphs 1-59 as though fully set forth herein.

61. The APA requires courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An agency exercising discretion must engage in "reasoned decisionmaking" related to the purpose of the relief at issue. *See Judulang v. Holder*, 565 U.S. 42, 53-55 (2011). USCIS's policies provide meaningful standards against which to evaluate its termination decision. Under those policies, SIJS beneficiaries generally retain deferred action until it expires, unless, after an individualized review, USCIS determines that deferred action is no longer warranted, the underlying SIJS petition has been revoked, or that the deferred action was granted in error. *See* USCIS Policy Manual, vol. 6, pt. J, ch. 4; *see also* Ex. 2, USCIS-ICE Memorandum at 2; *see also Padilla Posadas*, at *3 (holding that SIJS deferred action is subject to judicial review under the APA because the standardized process and enumerated criteria provide meaningful standards for review).

62. USCIS previously reviewed N.E.B.M.'s case, determined that he warranted a favorable exercise of discretion, approved his SIJS petition, and granted him deferred action through October 31, 2028. Ex. 3 (N.E.B.M.'s Grant of SIJS and Deferred Action).

63. USCIS subsequently terminated N.E.B.M.'s deferred action without providing any meaningful explanation for that decision. Ex. 1 (Notice of Termination of Deferred Action for N.E.B.M.).

64. Upon information and belief, USCIS terminated N.E.B.M.'s deferred action solely because ICE detained him, returned him to ORR custody, and because N.E.B.M. lacked lawful immigration status and/or because Defendants are seeking to place him in removal proceedings. *Id.*

65. That rationale is arbitrary and irrational because SIJS deferred action was specifically created to protect SIJS beneficiaries who lack lawful immigration status while they await the availability of an immigrant visa and the opportunity to apply for LPR status. *See* 2022 USCIS Policy Alert (explaining that USCIS created the SIJS deferred-action process because SIJS beneficiaries remain subject to removal while awaiting visa availability).

66. Indeed, USCIS knew that N.E.B.M. lacked lawful immigration status when it granted him deferred action. His lack of lawful immigration status therefore was not a new or changed circumstance, but one of the circumstances the SIJS deferred-action policy was designed to address.

67. Courts have found similarly situated agency action arbitrary and irrational where the agency terminated DACA based on placement in removal proceedings for lack of lawful immigration status, even though the DACA program was specifically designed for persons without lawful immigration status. *See Inland Empire–Immigrant Youth Collective v. Duke,* No. 17-cv-2048, 2017 WL 5900061, at *6–7 (C.D. Cal. Nov. 20, 2017); *see also Inland Empire–Immigrant Youth Collective v. Nielsen*, No. 17-cv-2048, 2018 WL 4998230, at *17–18 (C.D. Cal. Apr. 19, 2018).

68. Courts have also held that revocation of deferred action without explanation, process, or consideration violates the APA. *Padilla Posadas*, at *5 (holding that revocation of Petitioner's deferred action was "arbitrary and capricious" when the government revoked

deferred action with "no explanation, no process, and no apparent consideration of reliance interest, based on circumstances that have not changed in any articulated way.").

69. Courts have likewise recognized that deferred action provides meaningful protection from removal while SIJS beneficiaries await the opportunity to pursue LPR status. *See Darynel Gerardo Medina Lopez v. Raycraft*, 2026 WL 1370583, at *11 (E.D. Mich. May 15, 2026) (recognizing that a grant of deferred action rendered the petitioner's removal order "non-executable" unless and until USCIS terminated that protection). Thus, USCIS's decision to terminate N.E.B.M.'s deferred action based solely on the circumstances that originally warranted grant of deferred action was irrational and contrary to the purpose of the SIJS deferred-action program.

70. USCIS also impermissibly allowed the continued availability of deferred action to turn on ICE's enforcement decision. Whether a noncitizen receives discretionary relief may not "rest on the happenstance of an immigration official's charging decision." *Judulang*, 565 U.S. at 57. Yet, upon information and belief, USCIS terminated N.E.B.M.'s deferred action solely because ICE elected to detain him to pursue his removal, rather than USCIS identifying any relevant change to his individual circumstances.

71. USCIS has failed to identify any new negative discretionary factor, criminal conduct, security concern, or other changed circumstance that would justify revising its prior determination that N.E.B.M. warranted deferred action. Ex. 1 (Notice of Termination of Deferred Action for N.E.B.M.).

72. Nor did USCIS determine that N.E.B.M.'s SIJS petition had been approved in error or revoked, that his deferred action had been granted in error, or that new information rendered him ineligible for SIJS-based adjustment of status. *Id.*

73. USCIS further failed to provide any reasoned explanation for its abrupt change in position or to consider N.E.B.M.'s reliance interests in continued deferred action and deferred-action-based employment authorization. *Id*. USCIS likewise failed to explain why revocation of N.E.B.M.'s EAD was warranted or to consider the significant consequences that loss of EAD would have on a SIJS beneficiary whom USCIS had previously determined merited both deferred action and work authorization while awaiting visa availability. When an agency changes position, it must acknowledge the change, provide good reasons for it, and account for serious reliance interests engendered by the prior policy decision. *See FDA v. Wages & White Lion Invs., L.L.C.*, 604 U.S. 542, 569-70 (2025) (When issuing guidance, an agency cannot "change the requirements set forth therein without consideration of applicants' reasonable reliance interests, proper notice to applicants, and a reasonable opportunity for applicants to conform to the changed requirements") (citation omitted).

74. N.E.B.M. reasonably relied on USCIS's four-year grant of deferred action and 2022 USCIS Policy Alert to remain in the United States while awaiting visa availability, pursue his education, seek employment authorization, and continue on the pathway to LPR status established through SIJS. USCIS did not acknowledge or consider those reliance interests before terminating his deferred action.

75. USCIS therefore failed to consider important aspects of the termination decision, relied on considerations unrelated to the purpose of SIJS deferred action, and failed to articulate a satisfactory explanation connecting the relevant facts to its decision.

76. Accordingly, Defendants' termination of N.E.B.M.'s deferred action was arbitrary, capricious, an abuse of discretion, and not in accordance with law, in violation of the APA.

## COUNT TWO:
## VIOLATION OF THE *ACCARDI* DOCTRINE, FAILURE TO FOLLOW BINDING AGENCY POLICY GOVERNING SIJS DEFERRED ACTION

77. N.E.B.M. incorporates by reference the allegations contained in Paragraphs 1-76 as though fully set forth herein.

78. Federal agencies must follow their own binding policies and procedures when those policies affect the rights and interests of individuals. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures").

79. USCIS's SIJS deferred-action policy is binding agency policy that affects the rights and interests of SIJS beneficiaries. *See A.C.R. v. Noem*, No. 25-CV-3962, 2025 WL 3228840, at *15 (E.D.N.Y. Nov. 19, 2025) (recognizing that the SIJS deferred-action policy is subject to the *Accardi* doctrine because it affects the rights and interests of SIJS beneficiaries and explaining that *Accardi's* "ambit is not limited to rules attaining the status of formal regulations").

80. USCIS policy provides that SIJS beneficiaries who have been granted deferred action generally retain that status unless USCIS conducts an individualized review and determines that deferred action is no longer appropriate, the SIJS petition has been revoked, or the deferred action was granted in error. USCIS Policy Manual, vol. 6, pt. J, ch. 4, https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4.[2]

81. USCIS policy further contemplated individualized consideration of relevant positive and negative discretionary factors before terminating deferred action. *Id.*

---

[2]*See also* USCIS Policy Manual as of April 18, 2025, vol. 6, pt. J, ch. 4, https://web.archive.org/web/ 20250418205752/https://www.uscis.gov/policy-manual/volume-6-part-j-chapter-4 (detailing relevant discretionary factors).

82. USCIS policy does not permit automatic termination of deferred action based solely on ICE detention, return to ORR custody, or removal proceedings. Rather, USCIS must conduct a case-specific evaluation of the relevant discretionary factors and determine whether deferred action remains warranted. *See id.*; *see also* Ex. 2, USCIS-ICE Memorandum at 2 (confirming that "USCIS has the sole authority to grant and terminate deferred action for noncitizens with SIJ classification" and that "USCIS may terminate deferred action if the SIJ-classified individual was not eligible at the time of the initial grant of deferred action, the SIJ Form I-360 is revoked, or if they are no longer eligible based on new information, including new information about criminal activity that impacts the discretionary determination to grant SIJ deferred action").

83. USCIS's policies contemplate that SIJS beneficiaries generally retain deferred action until it expires unless, on a case-by-case basis, USCIS determines that deferred action is no longer appropriate. *See* USCIS Policy Manual, vol. 6, pt. J, ch. 4. Accordingly, USCIS policy does not permit deferred action to be terminated without explanation based solely on ICE detention, custody in ORR, placement in removal proceedings, or a beneficiary's lack of lawful immigration status.

84. USCIS failed to provide N.E.B.M. an individualized review consistent with those policies. Ex. 1 (Notice of Termination of Deferred Action for N.E.B.M.).

85. Upon information and belief, USCIS did not determine that N.E.B.M.'s SIJS petition had been approved in error, that his SIJS petition had been revoked, that his deferred action had been granted in error, or that any other policy-recognized basis for termination existed. *Id.*

86. Instead, upon information and belief, USCIS terminated N.E.B.M.'s deferred action based solely on ICE detaining him and returning him to ORR custody in addition to his purported lack of lawful immigration status. *Id*.

87. USCIS terminated N.E.B.M.'s deferred action without explanation and without identifying any new information demonstrating that deferred action was no longer warranted. *Id*.

88. By doing so, USCIS failed to apply the individualized review required by its own policies and instead effectively allowed the termination decision to turn on ICE's enforcement actions rather than the discretionary factors governing SIJS deferred action. *Id*.

89. By failing to follow its own binding policies and procedures governing SIJS deferred action—including its requirement that USCIS conduct a case-by-case, individualized assessment before terminating deferred action—Defendants acted unlawfully under the *Accardi* doctrine.

**COUNT THREE:**
**VIOLATION OF THE FIFTH AMENDMENT, PROCEDURAL DUE PROCESS**

90. N.E.B.M. incorporates by reference the allegations contained in Paragraphs 1-91 as though fully set forth herein.

91. The Supreme Court has long recognized that noncitizens physically present in the United States are entitled to due process protections, regardless of their immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Mathews v. Diaz*, 426 U.S. 67, 77 (1976).

92. The Fifth Amendment prohibits the federal government from depriving any person of liberty or property without due process of law. U.S.Const., Amdt. 5.

93. Once granted, N.E.B.M.'s deferred action and related employment authorization constituted protected liberty and property interests sufficient to require constitutionally adequate procedures before termination. *Ramirez Medina v. U.S. Dep't of Homeland Sec.*, No. 17-cv-

0218, 2017 WL 5176720, at *8-9 (W.D. Wash. Nov. 8, 2017) (finding deferred action for DACA recipients to have protected interest requiring procedural safeguards prior to termination because "[such] benefits have already been conferred"); *see also Inland Empire-Immigrant Youth Collective v. Nielsen*, 2018 WL 4998230, at *19-20.

94. Courts have repeatedly found that continuation of deferred action status is both a property interest and a liberty interest protectable under the Due Process Clause. *A.R. v. Noem*, 25-cv-03565, 2026 WL 194850, at *5 ("[T]his Court finds that Petitioner could not have had his deferred action status revoked without due process."); *Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 336 (E.D.N.Y. 2026) ("Plainly, the grant of SIJ status, deferred action and work authorization constitute important benefits such that revocation would constitute 'cognizable prejudice.'"); *Alfaro v. Mullin*, 831 F. Supp. 3d 177, 185 (E.D.N.Y. 2026) (same).

95. N.E.B.M. relied on these benefits to remain in the United States, pursue education and employment opportunities, maintain employment authorization, and continue on the pathway to lawful permanent residence created by Congress through SIJS.

96. N.E.B.M.'s deferred action protected him from removal while he awaited visa availability and allowed him to remain in the United States on the pathway to LPR established by Congress through SIJS. The termination of that protection therefore implicated exceptionally important liberty and property interests and heightened the need for accurate procedural safeguards before deprivation.

97. Defendants terminated N.E.B.M.'s deferred action without prior notice, without a meaningful explanation, and without any meaningful opportunity to contest the termination. Ex. 1 (Notice of Termination of Deferred Action for N.E.B.M.); *see Padilla Posadas*, at *5 (finding a due-process violation where USCIS summarily revoked SIJS deferred action with no pre-

deprivation notice, explanation of the rationale, opportunity to be heard, or opportunity to appeal).

98. When the government deprives an individual of a protected liberty or property interest, it ordinarily must provide notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

99. Here, the risk of erroneous deprivation is substantial because N.E.B.M. was given no opportunity to demonstrate that he continued to satisfy all criteria supporting deferred action or to rebut any basis for termination. Ex. 1 (Notice of Termination of Deferred Action for N.E.B.M.). The Supreme Court has recognized that the Constitution ordinarily requires some form of hearing before the government deprives a person of liberty or property. *Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

100. Indeed, "[t]he essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him" and "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews*, 424 U.S. at 333, 348 (citations omitted).

101. Additional procedural protections, including notice of the grounds for termination and an opportunity to respond before termination, would have significantly reduced the risk of erroneous deprivation. *See, e.g.*, *id.*

102. Those procedures would have been especially valuable here because USCIS provided N.E.B.M. with no explanation for the termination of his deferred action. Ex. 1 (Notice of Termination of Deferred Action for N.E.B.M.). Without notice of the agency's reasoning, N.E.B.M. had no meaningful opportunity to demonstrate that he continued to merit deferred action or that no individualized basis for termination existed.

103. The provision of such procedures would have imposed little burden on Defendants, particularly because USCIS and DHS already provide notice-and-response procedures in analogous deferred-action contexts. *See* 8 C.F.R. § 236.23(d)(1) (showing that "USCIS will provide a Notice of Intent to Terminate and an opportunity to respond prior to terminating a grant of [DACA]," unless the individual is convicted of certain "national security-related" or "egregious public safety" offenses); *see also* Final Rule, Deferred Action for Childhood Arrivals, 87 Fed. Reg. 53,152, 53,245-46 (Aug. 30, 2022) ("DHS agrees with commenters that in most cases, there are good reasons to give DACA recipients adequate notice and an opportunity to respond prior to termination of their DACA. This approach will promote fairness and accuracy … by allowing DACA recipients the opportunity to correct any incorrect information and provide supplementary information to rebut the intended basis for termination").

104. The existence of these procedures in analogous contexts demonstrates both the value of advance notice and an opportunity to respond and the minimal burden associated with providing those protections.

105. Because the provision of a pre-deprivation process was both possible and valuable in preventing an erroneous deprivation of N.E.B.M.'s interests, Defendants were required to provide notice and an opportunity to be heard before terminating N.E.B.M.'s deferred action and related employment authorization. *Zinermon*, 494 U.S. at 127; *Mathews*, 424 U.S. at 333-35.

106. Under the balancing test articulated in *Mathews*, Defendants were required to provide meaningful notice and an opportunity to be heard before terminating N.E.B.M.'s deferred action and related employment authorization. *Mathews*, 424 U.S. at 335.

107. Defendants nevertheless deprived N.E.B.M. of those protections through an unreasoned, unappealable, post-hoc termination notice that afforded him no meaningful opportunity to challenge the agency's decision before it took effect.

108. By failing to provide these procedures, Defendants have violated N.E.B.M.'s rights under the Due Process Clause of the Fifth Amendment.

## PRAYER FOR RELIEF

WHEREFORE, N.E.B.M. respectfully requests that this Court:

a. Assume jurisdiction over this matter;

b. Enjoin Defendants from transferring N.E.B.M. to DHS or ICE, or from transferring him outside the Western District of Michigan, while this case is pending;

c. Declare that the termination of N.E.B.M.'s deferred action was unlawful;

d. Vacate the termination of N.E.B.M.'s deferred action, the related Notice of Intent to revoke deferred-action-based employment authorization, and any related termination of employment authorization;

e. Order USCIS to reinstate N.E.B.M.'s deferred action and associated EAD and all benefits associated with that deferred action pending lawful adjudication;

f. Order Defendants to extend N.E.B.M.'s SIJS-related deferred action and associated eligibility for SIJS-based protections and associated eligibility for employment authorization, and to extend such protections for a period equal to the time during which those protections were unlawfully withheld;

g. Enjoin Defendants from terminating N.E.B.M.'s deferred action or EAD absent notice, a reasonable explanation, and a meaningful opportunity to respond;

h. Order any relief necessary to preserve N.E.B.M.'s eligibility for SIJS-related protections and adjustment-of-status benefits while this action remains pending;

i. Award N.E.B.M. his costs and reasonable attorneys' fees under the Equal Access to Justice Act or any other applicable statute or regulation; and

j. Award such other and further relief as the Court deems just and proper.

Dated: October 16, 2026

Respectfully submitted,

s/ Molly Huffaker
Molly Huffaker
MICHIGAN IMMIGRANT RIGHTS CENTER
1500 E. Beltline Ave. SE, Ste. 300
Grand Rapids, MI 49506
(313) 723-1456
mhuffaker@michiganimmigrant.org

*Attorney for Plaintiff*

Of Counsel:
Salvador M. Bezos
J.C. Rozendaal
Kristina C. Kelly
Harrison J. Adams
STERNE, KESSLER, GOLDSTEIN & FOX P.L.L.C.
1101 K Street NW, 10th Floor
Washington, DC 20005
(202) 371-2600
sbezos@sternekessler.com
jcrozendaal@sternekessler.com
kckelly@sternekessler.com
hadams@sternekessler.com
(Not admitted to WDMI)

## CERTIFICATE OF SERVICE

I, undersigned counsel, hereby certify that on October 16, 2026, I filed this Complaint for declaratory and injunctive relief and all attachments using the CM/ECF system. I will also mail a copy by USPS Certified Priority Mail to each of the undersigned individuals:

**Joseph B. Edlow**,
Director
U.S. Citizenship and Immigration Services
5900 Capital Gateway Drive
Camp Springs, MD 20588

**Rose Kendrick**,
Director, National Benefits Center
U.S. Citizenship and Immigration Services
National Benefits Center
850 NW Chipman Rd, Suite 5000
Lee's Summit, MO 64063

**David J. Venturella**,
Senior Official Performing the Duties of the Director
U.S. Immigration and Customs Enforcement
500 12th Street, SW
Washington, DC 20536

**Markwayne Mullin,**
Secretary of Homeland Security
U.S. Department of Homeland Security
2707 Martin Luther King Jr. Ave. SE
Washington, DC 20528

**United States Citizenship and Immigration Services**
5900 Capital Gateway Drive
Camp Springs, MD 20588

**United States Immigration and Customs Enforcement**
500 12th Street, SW
Washington, DC 20536

**United States Department of Homeland Security**
2707 Martin Luther King Jr. Ave. SE
Washington, DC 20528

s/ Molly Huffaker
Molly Huffaker
MICHIGAN IMMIGRANT RIGHTS CENTER
1500 E. Beltline Ave. SE, Ste. 300
Grand Rapids, MI 49506
(313) 723-1456
mhuffaker@michiganimmigrant.org